Marian E. WASHINGTON, Appellant,

v.

Joseph C. SMITH, et al., Appellees.

No. 95–7197.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 2, 1996.

Decided April 12, 1996.

Robert L. Bell, Washington, DC, argued the cause and filed the briefs, for appellant.

Amy S. Owen, Fairfax, VA, argued the cause, for appellees and filed the brief for appellee Vitale.

Timothy J. Battle, Alexandria, VA, was on the brief, for appellee Levy.

Joseph C. Smith and Ken Leiker, pro se, appeared.

Before: WALD, GINSBURG and HENDERSON, Circuit Judges.

Opinion for the Court filed by Judge GINSBURG.

GINSBURG, Circuit Judge:

For more than 22 years Marian Washington has been the head coach of the women's basketball team at the University of Kansas. She is a prominent member of the coaching community and a former president of the Black Coaches Association. Her Kansas Jayhawk teams have won more than 60% of their conference games and attended five NCAA tournaments.

When a basketball publication criticized Washington's coaching ability, she filed suit for defamation. The district court granted summary judgment for the defendants, denied the plaintiff's request for discovery, and held that the defendants' statements were not actionable. Washington challenges each of these rulings and also argues that the entry of summary judgment violated her rights to due process and to a jury trial. We affirm the district court in all respects.

## I.   Background

Defendant Joseph C. Smith, president of defendant Women's Basketball News Service (WBNS), agreed to write the women's basketball section for *Dick Vitale's 1993–94 College Basketball Preview,* a magazine with a national circulation. Smith submitted this commentary about Washington's team: "Talk about talent, the Jayhawks are loaded. . . . But playing to their ability is usually sabotaged by suspect coaching. This season should prove no different." After editing by defendants Ken Leiker and Raymond Levy, respectively editor-in-chief and publisher of the *Preview,* the published version of Smith's commentary read: "The Jayhawks are loaded with talent. . . . But coach Marian Washington usually finds a way to screw things up. This season will be no different."

Defendant Dick Vitale is a commentator and former college and professional basketball coach who contracted with the *Preview* to use his name. Washington contends that Vitale also had editorial input.

Vitale and Levy moved for summary judgment. Smith, WBNS, and Leiker, pro se, filed letters denying Washington's allegations. Washington moved for a default judgment against Smith and WBNS for failing to comply with the district court's order regarding proper service; she also moved for a default judgment against all three pro se defendants for failing to answer her complaint.

The late John Pratt, District Judge, treated the letters of the pro se defendants as motions for summary judgment under the liberal standards for parties proceeding pro se. The court found that (1) the statement in the *Preview* was capable of conveying a defamatory meaning and (2) was intended as an opinion rather than as a statement of fact; (3) the success of the Jayhawks was a matter of public concern; therefore (4) the opinion was protected under the First Amendment because either (a) it did not rely upon objectively verifiable facts, or (b) if it did rely upon objectively verifiable facts then Washington was unable to show that no reasonable person could find that those facts supported the interpretation in the opinion. The district court then granted summary judgment for all the defendants and denied Washington's motions for a default judgment as moot. 893 F.Supp. 60 (1995).

## II.   Analysis

"A statement is defamatory if it tends to injure plaintiff in his trade, profession or community standing." *Moldea v. New York Times,* Co., 15 F.3d 1137, 1142 (D.C.Cir.1994). There is no categorical First Amendment immunity against defamation suits for statements of opinion. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18–19, 110 S.Ct. 2695, 2705–06, 111 L.Ed.2d 1 (1990). To insure room for "imaginative expression" and "rhetorical hyperbole," however, a statement of opinion is actionable only if it has an explicit or implicit factual foundation and is therefore "objectively verifiable." *Id.* at 20–22, 110 S.Ct. at 2706–08; *see White v. Fraternal Order of Police,* 909 F.2d 512, 522 (D.C.Cir.1990) ("Assertions of opinion on a matter of public concern . . . receive full con-

stitutional protection if they do not contain a provably false factual connotation").

In a defamation action based upon a statement made in a review of a book on professional football, this court applied a "supportable interpretation" standard: the writer is immune from a defamation action unless the plaintiff can show that the statement is "so obviously false" that *"no reasonable person could find* that the review's characterizations were supportable interpretations" of the underlying facts. *Moldea v. New York Times Co.*, 22 F.3d 310, 315, 317 (D.C.Cir.1994) (emphasis in original) (*"Moldea II"*). In this case we deal with critical commentary appearing in a sports publication, a setting not much different from that involved in *Moldea II*. Indeed, in *Moldea II* we observed that "[s]ports columnists frequently offer intemperate denunciations of coaches' play-calling or strategy, and readers know this and presumably take such railings with a grain of salt." *Id.* at 313. The court went on to remark that "criticism's long and impressive pedigree persuades us that, while a critic's latitude is not unlimited, he or she must be given the constitutional 'breathing space' appropriate to the genre." *Id.* at 315 (citing *New York Times v. Sullivan*, 376 U.S. 254, 272, 84 S.Ct. 710, 721–22, 11 L.Ed.2d 686 (1964)).

Here Washington acknowledges that the offending statement in the *Preview* is an opinion on a matter of public concern and that her burden was therefore to prove that the statement is "false" under the standard of *Moldea II*. Accordingly, the only substantive dispute before us is whether Washington met that standard, *i.e.*, whether she showed either that the statement was based implicitly upon facts that are demonstrably untrue or that no reasonable person could find that Smith's statement or the revised version published in the *Preview* is a supportable interpretation of the underlying facts.

The district court noted that some of those facts are available elsewhere in the same edition of the *Preview.* For example, the Jayhawks have not made it to the women's NCAA "final four" during the 22 years that Washington has coached the team. They lost in the first round of the tournament in 1992–93 even though two of the nation's leading players were on the team. On the other hand, the Jayhawks have been ranked nationally and have won several tournaments during Washington's years as their coach. As the district court observed, these facts are open to different interpretations by reasonable persons, who would have to ask themselves:

How many wins does a coach need before a writer or fan is prohibited from criticizing the coach's ability? Do commentators know the "magic number" so they can ascertain when their opinions have become actionable? ... Equally troubling is how a jury would consider evidence of plaintiff's ability to "screw things up." Would the jury be required to watch tapes of the Jayhawks and determine whether Coach Washington's decisions led to the team's defeat?

893 F.Supp. at 64. We agree with the late learned district judge that the ambiguity in these facts is fatal to Washington's defamation claim.

### III. Conclusion

Washington has not shown that the original statement that Smith submitted to the *Preview,* or the edited version as subsequently published in the *Preview,* is "objectively verifiable" and false. Nor has Washington shown that no reasonable person could find that the characterization in either of the two statements is supported by the facts. Neither of the statements, therefore, is actionable in defamation under the standards adopted by the Supreme Court in *Milkovich,* 497 U.S. at 22, 110 S.Ct. at 2707–08, and by this Circuit in *Moldea II,* 22 F.3d at 317.

Washington has raised other arguments, which were considered and properly rejected by the district court; they do not warrant further treatment in another published opinion. The judgment of the district court is therefore

*Affirmed.*